The next case, the last case, I believe the last attorney has arrived, is SPV Osus v. UBS and others, and Access International Advisors. Thank you. Thank you. You were stuck on the trains, I take it. Counsel, you may begin. Good morning. Thank you, Judge Puhler. May it please the Court. The main point I hope to leave you with is that we should not even be here on the merits because there is no federal related to jurisdiction. This case is connected to the Madoff liquidation only by a very long, very thin thread that snaps at numerous points along the way. But if we do stay in federal court, we should at least be able to go forward and at least get jurisdictional discovery against UBS and at a minimum a chance to replead against Access. Why? Didn't Judge Rakoff give you folks an opportunity to submit additional facts? Your Honor, he did give us an opportunity to submit additional facts that we would plead if we were allowed to replead. We believe that Judge Rakoff's determination that those facts were not sufficient was incorrect. It was not a case of a failure to let you suggest an amendment. He said that what you proposed didn't go to the question of causation on which he decided the Access issue and therefore it was futile. We'll come back to that, but that's it. Yes, Your Honors, and I'll be happy to come back to that. I would like really to talk at the first instance about removal jurisdiction in this case. Under the correct legal standard, the district court should have remanded because the correct legal standard required Judge Rakoff to resolve all doubts against removal jurisdiction, and he did the opposite here. The defendants cannot show doubtless related to jurisdiction because there are at least very serious doubts that one, they would be allowed to file late claims, and two, that these claims would be worth anything. There are simply too many links in this chain between this case and the Madoff liquidation. But just looking at it from a kind of sensible point of view, if these are not related to the Madoff bankruptcy, don't we have a situation of any number of possible claimants coming in and different state decisions being made so that it is sensible to try to get them together by a court that has an expertise in it? I do think Judge Rakoff stretched in terms of the things, but isn't the stretching a perfectly sensible stretching in terms of judicial administration of these cases so that if it is at all possible, we should accept that stretching? I mean, the thing most powerful about his argument was the expertise and speed with which the federal courts can. Now, let me just . . . that's sort of my worry, and I'm giving you my worries so that you can . . . Your Honor, Judge Calabresi, I think this case provides the court an excellent opportunity to clarify the circuit law regarding related to jurisdiction and address just those points. In this particular context, an important point to keep in mind is we're talking about a liquidation. One thing in the Silatex case that the Supreme Court said where the Supreme Court noted related to jurisdiction cannot be limitless, it said . . . And it may have broader limits in the context of a reorganization as opposed to a liquidation. Here, one thing, a very good question that you asked, a very good part of your question, Judge Calabresi, is what if we had different things going on in state court cases? This case, there would really be no difference if this case were adjudicated in front of Judge Rakoff or in New York State Court as far as the bankruptcy court is concerned. Because this is a liquidation where you're going to have . . . first, you have to have all this litigation over whether these late claims could be filed to start with. And then the question is, is there any money to pay these claims that are going to be at the back of the line? And this is not a case . . . I think the real rationale, the primary rationale for bankruptcy related to jurisdiction is if a bankruptcy court is trying to administer a complex reorganization, it needs to have jurisdiction to cover these cases. But in this case, if we litigated our case in New York court and the defendants brought contribution claims in the Madoff liquidation over here, it would be no difference than if we did so in front of Judge Rakoff, who's not the bankruptcy court. And the district court did stretch here in looking at . . . in terms of resolving all these doubts. All these things have to happen before this case could affect the liquidation. Either the SIPA bar date does not apply to Madoff claims, or if it does apply, the bankruptcy court chooses to apply the non-SIPA excusable neglect standard. Defendants know that if their claims are absolutely time barred, they can have no effect. That's why they only talk about claims against Madoff individually and not against the Blemis estate. But the bankruptcy court would have to find that they have an excusable neglect argument to make and then find that they meet it. And then the defendant's contribution claims have to be litigated on the merits, because they're common law claims. They're not contractual indemnification claims, so there's no . . . Can I bring you back a step as to the excusable neglect standard, the appropriate standard to apply? What we're dealing with is the Chapter 7 estate. We do not think it is, Your Honor. We think the Madoff individual estate was consolidated with the SIPA estate because the finances were so intertwined. That's what the bankruptcy court's order found, and Madoff commingled all these funds. So, we think all the estate is a consolidated estate that's under SIPA, and there's a SIPA bar date, July 2, 2009, and SIPA only has very stringent statutory exceptions to the bar date that no one argues applies here. But didn't the bankruptcy court state that the matters would be consolidated, but it would proceed under both SIPA and the code? Yes, Your Honor. In one clause, in one sentence, it says, under SIPA and bankruptcy. But the whole rest of the order says, I'm consolidating this because Madoff intertwined his finances. So, the principal purpose of SIPA is to get compensation for the investors. Judge Rakoff read the bankruptcy court order, though, in the way Judge Ramos has suggested, that the bankruptcy opening would be available, didn't he? Yes, Your Honor. Do you think that that was clear error in reading what the bankruptcy court did? Your Honor, not clear error as a factual matter. Legal error in terms of resolving that doubt in favor of removability. And then there's the question, even if excusable neglect applies, would these defendants be able to satisfy it? And I think the most damning fact on that issue is these same defendants were sued for the same conduct in 2010 by the trustee. And even at that time, they didn't attempt to file protective contingent claims. They could have done that. And back then, delay and especially reason for delay, reason for delay is the most important excusable neglect factor, length of delay. In 2010, if they tried to file late claims there, they might have had a shot on length of delay, but now they have no reason because they knew about these potential claims. My time is up. I'm sorry. I've gone over my time. You have reserved two minutes for rebuttal, however. Thank you, Judge Poole. We'll hear from UBS and others. Thank you, Your Honor. May it please the court. Marshall King for the UBS Appellees. This is an action by a creditor of the made-off estate against potential creditors of the made-off estate based on aiding and abetting the debtor's primary torts and which tracks, as we heard this morning, almost verbatim claims that the made-off trustee made against these same parties a couple of years earlier. The test, as the Supreme Court has said in Celotex, of related to jurisdiction is a grant of some breadth if the outcome could conceivably have any effect on the debtor's estate. We heard this morning from Mr. Ward, and they've emphasized in their papers repeatedly, that doubts are supposed to be resolved against removal. What conceivable effect could this possibly have on the debtor's estate? There's at least two conceivable effects, and only one of which was addressed by Mr. Ward this morning. The one, of course, is the potential contribution claims, which I'll come back to in a moment. The other, which is not addressed at all, is the fact, and Judge Rakoff held as much, that if the plaintiff here is successful in recovering against the defendants on these claims, their claim against the made-off estate will be reduced. They concede that if they recover more than $1.5 billion, it will be reduced. I think that's not right. I think from $1, their damages to the extent they recover from these parties will be reduced. Their claim then against the made-off estate will be reduced from $1. But the point is, they concede that if they recover enough, it will reduce their claim against the debtor's estate. The debtor's estate is empty of funds. The debtor's estate is not empty of funds, Your Honor. They have a claim, an allowed claim, against the made-off estate that they're presumably recovering on as the trustee distributes money. If that claim, because they have recovered the same damages from these parties, is reduced, their payout will be reduced. Their claim against the made-off estate is not as a general creditor as ours would be. Their claim is a customer claim that is being paid by the made-off estate. It's deposited directly into BMLIS, right? I'm sorry? They deposit it directly. Yes, that's their customer claim against the estate, yes. No, but you're saying that at the moment, if we say that 70 percent, just making up the figure, of customer claims are being paid, the effect of whether they would win or not would have an effect on what the other customers would get. Absolutely, Your Honor. It will have an effect on what they can get. It will have an effect on what – and therefore an effect on what others would get. And that that is enough without anything else to give jurisdiction? Absolutely. As Judge Rakoff held, it was not addressed in their briefs except to concede that there would be an effect at a certain level. The other effect would be the potential contribution claims, Your Honor. The law teaches – it's a liberal test, conceivable effect. We do not have to show an absence of uncertainty. In fact, Judge Ramos, you said in a case called Ritchie Capital Management against BMO Harris Bank, certainty or even likelihood is not required to satisfy the conceivable effect test. We don't have to prove that we will prevail on an inexcusable neglect or other standard in the bankruptcy court or that we will recover. That would be the test if the standard for related to jurisdiction was will there be an effect. That's not the standard. The standard could conceivably there be an effect. And it just is not hard to articulate what the conceivable effect of our contribution claims would be. I should point out – oh, sorry. Before you get to those claims, Judge Rakoff found that you would be able to file a late claim. Was he right about that? And if so, how should we be measuring by when you should have filed a claim? I think the law teaches that we shouldn't probe too deeply into will we or won't we. He thought we – I don't know that he did, in fact, find we would. I think he found that we had a reasonable legal argument that we would. And that's the test, again. It doesn't have to be certainty, just possibility. Here's another reason why one shouldn't look too deeply at will this particular claimant recover or not from the bankruptcy. It gives the defendant too much – it gives the defendant essentially veto power over whether there is federal subject matter jurisdiction. In other words, there are cases where the plaintiff wants to be in federal court. Judge Swain, in a case decided just this March after briefing here, a case called Howe, H.A.U. Yintow v. H.S.B.C. Holdings. And the site is 2017 Westlaw 816136. She followed Judge Rakoff's analysis to the T in a case where it was the defendant saying – it was another Madoff case. The defendant was saying, we don't have claims for contribution against the Madoff estate. The judge found, nevertheless, that those claims were possible following Judge Rakoff's reasoning. Let me see if I understand. Sure. That is, what you're saying is that if it were the plaintiff who wanted to be in federal court, your client, if we buy the plaintiff's argument here, would, by delaying when they are filing and doing things of this sort, destroy federal jurisdiction and leave the plaintiff out. Is that the point you're making? Exactly right, Your Honor. Theoretically, if it were the plaintiff here, as it was in Judge Swain's case, the Howe, Yintow case, who wanted to be in federal court, the defendant could somehow say, you know what, I waive those claims or I – Presumably that was not a removal case like this one is. It was not a removal case, of course, Your Honor. And isn't Mr. Ward right that in a removal case we need to look deeply because we don't want federal courts going around picking off state courts just because we want them? I don't think that's right, Your Honor. He is right that doubts are resolved against removability. But that's just another way of saying it's our burden to prove subject matter jurisdiction. We concede it's our burden to prove subject matter jurisdiction. But the test for subject matter jurisdiction in this case is very liberal and very broad. And that's why – But not limitless. Certainly not limitless. We are not saying we are related to the Enron bankruptcy, that our claim against Enron would not have a reasonable legal basis. There's no argument there. Your argument about this being unfair to plaintiffs in the other instance, isn't that just a statement that by and large the plaintiff can choose in these cases what court they want to be in? And that this is the point of what Judge Ramos just said about the difference between a removability in a case in the first instance. That if a plaintiff has chosen to be in federal court, we don't give the defendant this right to destroy the jurisdiction that way. But if a plaintiff has chosen to be in state court, more is asked. I don't know that I buy that. I don't think that's right, Your Honor. I think the question is simply is there subject matter jurisdiction or not. And who has the burden? If the plaintiff sues in federal court, the plaintiff has the burden of showing federal subject matter jurisdiction. If the defendant wants to be in federal court and removes, it has the burden and doubts are resolved against it. Your Honors, I haven't had a chance to address personal jurisdiction. If I may, just for two seconds, just point out that this court requires some sort of causal relationship from the in forum activities of the defendant and the plaintiff's injury in order to establish specific jurisdiction. And as Judge Rakoff held here, both in the jurisdiction decision and in the 12B6 decision, this complaint just utterly fails to articulate a theory of causation here. It says we invested with Madoff, and it says they assisted Madoff, but it doesn't in any way, certainly not with proximate cause. Am I right to say that our circuit's rule is that the greater the acts, the less the causation is needed for personal jurisdiction? The smaller the acts, the greater the link to causation is there, but we have this kind of funny sliding scale? That is this circuit's holding in Chu versus Dietrich. I think there's a decent argument that, in fact, the test should be proximate cause in all cases, and that issue is currently before the Supreme Court. As we pointed out in our 28J letter, should be decided this month, frankly, in the Bristol-Myers-Squibb case. The exact standard might be decided by the Supreme Court in that case. It was argued a month or so ago. But you think that we can decide it on the basis of past cases, or should we wait for the Supreme Court? Well, just simply by the fact that it's June 14th, you may get a decision soon enough. But I think it doesn't satisfy whatever the causal standard is. We have more confidence in the capacity of the Supreme Court to decide. Whether it's proximate cause or but-for cause, there's nothing here. The complaint is barren, except for these conclusory statements that their injury is proximate cause. There's nothing to tie it together. Well, we'll discuss proximate cause with the access counsel. Of course you will. Thank you. Thank you, counsel. We'll hear from the Access International defendants. May it please the court, thank you for your indulgence, for my tardiness. Anthony Passione on behalf of the Access defendants. I wish to address just two points. You can raise the podium. Sorry? Get closer to the microphone. I'm sorry. You can raise it. I think it's all the way up. Oh, it's as high as it goes? Sorry. I'll try and speak up, Your Honor. Anthony Passione on behalf of the Access defendants. I wish to address two points here today. One being whether or not there was dismissal was appropriate on the basis of a lack of allegation of proximate cause. And number two, whether or not the plaintiffs were given the right to replead and otherwise. As to the proximate cause, Your Honor, there's no dispute that under the law, the substantial assistance element of all the aiding and abetting claims asserted here have a component of proximate cause. That is, that the defendant's conduct caused plaintiff's loss. It's not but-for causation, also loss causation. Okay. Loss causation. Correct, Your Honor. That's the thing I want to focus on because it seems to me that there's no question on a but-for, a more simplistic thing, but-for something, that that was pleaded. And proximity in that sense of proximate cause was there. So your argument is that they didn't plead loss causation. They didn't plead that what your client did, because it wasn't relied on in any way by them, actually increased the chances of this harm. That this is like the case of, assuming your client did something wrong, of speeding and being under a tree, which happens to fall at that moment. Your Honor, honestly, I would even dispute but-for causation. I mean, there is nothing. There is not a, but we'll get to the. But-for causation is, if you hadn't been around, maybe Madoff would have gone under. That's that claim. So that, yeah. If that's sufficient for but-for causation, we could debate that. But we don't need to, fortunately, because I don't think you get to loss causation. Loss causation, as Your Honor is aware, because he's written on the subject of loss causation and other decisions, requires that our conduct cause plaintiff's loss. Caused, in the Bear Stearns case in Cromer, it caused the Ponzi scheme. It caused the fraudulent conduct to befall on the plaintiff. And that did not happen here. There was not a single communication between the access defendants or the subject funds, Group Monta Lux Alpha, and the plaintiff or its asinore. There is not a single contact between those two entities. There is- Did Judge Rakoff specify that the problem was loss causation? He just said there was no proximate cause. And the problem with saying proximate cause is that usually proximate means, you know, nearness in time and space. And that's a harder thing to say there wasn't here. Did he specify loss causation? He did, Your Honor. He specified loss causation. He relied on the cases that speak of loss causation. At times he would interpose the phrase proximate cause in his decision. But the concept is, as Your Honor is perceiving, it is whether or not the conduct caused plaintiff's loss. And it did not. We point to a number of decisions in our briefs, Your Honor, which goes to this very subject, where a financial institution, you know, ignores red flags and violates margin rules that allows money to be pumped into the Ponzi scheme. And this is the Cromer case. And the court finding that allowing money in or propping up that Ponzi scheme is not sufficient proximate cause, loss cause for the plaintiff's injury. This is at the fleeting stage, right? Yes, Your Honor. The Cromer case, as well as three other cases that we cite on page 18 of our brief, dismiss claims on 12B6 grounds. It includes Armstrong, the Rosner case, and the In re Agapi case. All those cases dismissed on 12B6 grounds. Because if the pleading is adequate, were adequate, then the question of whose burden it is to bring in evidence about loss causation is something which is quite unclear and depends on the particular context of loss causation. But here you say that doesn't come up because it was an inadequate pleading of loss causation. So found properly, Judge Rakoff, so say these cases that there was no proximate cause. There was no foreseeability between my clients who were entities located in Europe and this plaintiff when there was absolutely no communication, no contact, no discussion. I may push you. I know your time is up. But if I may push you to the second point, then Judge Rakoff says, do you want to amend? And they propose some things. Does that amendment that they propose go to the pleading requirement of loss causation? It does not, Your Honor. Their proposed amendment, and in that letter, all it did was outline temporarily when they made investments vis-a-vis when my clients made certain investments or withdrawals from the Madoff Fund. There is nothing in that document or in the proposed amendment suggesting some reliance, some contact, some nexus, some foreseeability as to my client's conduct and the plaintiff's investments. And I will point out, the plaintiffs invested in BLMIS first before Groupmont or Luxalfa were even established. So there is nothing in that letter which would suggest any additional nexus or satisfy the causation issue. Thank you, Your Honor. Mr. Ward, you are reserved two minutes for rebuttal. I'll lower this again. Thank you, Your Honors. Quickly, to address UBS's points regarding the related to jurisdiction, the conceivably effect test, I think, is broad, but as Judge Pooler reminded us, the Supreme Court has said it cannot be limitless. I think especially in the Silotek's case, I would take a look at the language where the court notes that in a liquidation context . . . Could you address the specific argument that was first made about the effect of what you would get on the other? Because that was interesting. Yes, Your Honor. I refer to that as the offset argument. That, again, gets into another long chain of speculative contingencies before that could have any effect and additional litigation in between. One thing, I think, as Mr. King alluded to, our claim here is up to $3 billion, which represents the stated net asset value of our account at Blemis before the collapse. Is that the fake money account? That includes the fake profits, the fraudulent profits. The trustee . . . this was litigated in the Blemis bankruptcy. The trustee is allowing claims only for net cash in, but part of our claim is that we were defrauded out of an investment that we were told that we had by retaining this money. But now they have affirmed many times the net losers and net winners and who gets what. But, Your Honor, these are issues that remain to be litigated in this case, whether we could get that recovery. I think in this case, UBS and Access would be arguing that anything we got paid from the Blemis estate should be offset against any recovery we had against them. Let me ask something. I tend not to be practical, but I'm going to ask a very practical question. Of course, if there is no jurisdiction, there is no jurisdiction. But if we are in doubt, and it's a close question of jurisdiction, does it make sense to find no jurisdiction, practically, and send the whole thing back to state court, to day one, to re-argue everything that has already been argued and decided, and we have things which may come out your way or not, depending on how we buy the other arguments that have been made. The funny thing about it is if we accept your argument of no relatedness and therefore no jurisdiction, this case goes back to day one, and everything that has been argued before Judge Rakoff has to be re-argued again in state court. Is that something we're allowed to think about, even? It's a battle of our minds? As I say, this is a practical argument, and I'm not a practical person, so maybe it shouldn't be . . . Well, Your Honor, I think to the extent that we have to look at the limited nature of federal jurisdiction . . . No, no. If there is no jurisdiction, there's no jurisdiction. There's no question. I'm just saying if it is uncertainty . . . If there is uncertainty, and that's why the MTBE case and other cases from this court say you must resolve doubts against removability, because if it's a close question, if there's uncertainty, that needs to tip in the balance in favor of the balance of the state interest and the recognition that federal jurisdiction is constitutionally and statutorily limited. In a close case, I think the MTBE case says those are the doubts that have to be resolved against removability. And, a final related thought to leave with is, as I mentioned before, whether this case gets tried in state court or in front of Judge Rakoff, to conclusion, you know, again, notwithstanding the practical problems that you're repeating a lot of stuff, but setting that practicality aside, I also like to be impractical, is as far as the bankruptcy liquidation is concerned, it makes no difference whether this claim comes into the bankruptcy court from state court or from a different federal court, because you don't have any reorganization. You don't have a bankruptcy judge who is trying to manage a reorganization or anything of that sort. You'd have to get permission even to get into bankruptcy court. Isn't that correct? Well, they, I mean, I would think so. Do you have a claim pending? In the bankruptcy court, no, Your Honor. No, we are holders of an allowed claim that has been allowed by the trustees. The allowed claim is OSIS, and you are the... and had the allowed claim, and it assigned that claim to us, to SPV. You do have a claim pending. SPV does, as a signer? Yes, Your Honor. As a signee, SPV has an allowed claim pending in which SPV has received, you know, we've received partial payment on that claim. Now, let me go back then to this. If you were to win this case, would your allowed claim be diminished? We would at least be arguing, at least to the extent that a win in this case is anything less than $3 billion, or at least, especially to the extent it's lower than $1.5 billion, we would be arguing that it should not diminish our claim against the estate. How much did OSIS deposit? Almost $3 billion. Well, the net deposits are the $1.5 billion. But the claim, you know, as with other claimants, OSIS was, if not the largest single investor in Blemis, it was certainly one of the largest single investors. So our overall investment, the stated value of the account that, you know, at some point earlier in the Ponzi scheme, we could have redeemed for, you know, perhaps we could have redeemed it for full value, or perhaps attempting to redeem it for full value would have caused the Ponzi scheme to collapse earlier. You know, we can't say. But, yes, so OSIS, as with other Madoff claimants, put in claims for the entire stated value of its account, the entire stated net asset value, and the trustee made the determination, I think this was the trustee, it may have been ratified by the bankruptcy court, that it's only allowing claims against net cash in, but then you still have, you know, well, there still may be some argument that there are claims toward the remaining net asset value, but nobody, I mean, nobody expects there to ever be money to pay those. If I may, just one more going the other way about retrying the issues. The question of what loss causation is and what it is relevant to this is a question of state law. Yes. Yes, Your Honor. And all of our claims are state law claims. To be said on retrying the issue, it is retrying it, but it is retrying it in the courts that presumably have greater knowledge as to what the law is to be applied than the federal court. That's exactly right, Your Honor, both with regard to, you know, pleading loss causation under the state law cause of action and as to trying the claims on the substantive merits. As much as I think I know more about loss causation than anybody in the world, what is relevant is not what I think I know, but what New York would want to do about loss causation. Yes, Your Honor, exactly. Thank you, counsel. Thank you all. Thank you. A reserved decision. The last case on our calendar is on submission, so I'll ask the clerk to adjourn court. Very well argued by both sides, by the way. Very well argued by both sides.